## A. VAN METER, Respondent, v. A. C. POOLE, Appellant.

### Kansas City Court of Appeals, May 4, 1908.

1. **MORGAGES: Subsequent Grantee: Assumption of Debt: Consideration: Evidence: Frauds and Perjuries.** Where the mortgagor delivers a deed for the mortgaged premises an agreement by the grantee to pay an existing debt against the land in part or full payment of the purchase money, is not within the Statute of Frauds, need not be in writing and is not an agreement to pay the debt of another, but an original undertaking and does not vary the terms of the contract and is not merged therein.

2. ——: ——: ——: ——: **Principal and Surety: Limitations.** Where the grantee of a mortgagor assumes the mortgage debt he becomes the principal in such debt to the mortgagee and the mortgagor is surety and the parties should deal with him accordingly; and the mortgagor's right of action against the mortgagee does not accrue until he has paid the mortgage debt, and a surety of such mortgagor stands in his shoes and has no right of action until he has paid the mortgage debt; and the Statute of Limitations does not begin to run in his favor until such time.

3. ——: ——: ——: **Principal and Agent: Evidence.** Evidence held to establish the agency of the defendant's husband.

Appeal from Barton Circuit Court.—*Hon. Charles A. Denton,* Judge.

AFFIRMED.

*H. W. Timmonds* for appellant.

(1) The purchaser of mortgaged premises does not personally assume the payment of the mortgage debt, unless it is clearly assumed by a recital in the

deed, or proved to have been expressly agreed to be paid by the purchaser as a part of the purchase price of the premises. Keifer v. Shacklett, 85 Mo. App. 449; 15 Am. and Eng. Ency. of Law (1 Ed.), p. 832; 1 Jones on Mortgages (3 Ed.), sec. 748. (2) A purchaser of mortgaged premises is not personally liable for the debt on the property, unless he expressly agrees to pay the same. Insurance Co. v. Irwin, 67 Mo. App. 90; Walker v. Goodsill, 54 Mo. App. 631; Hall v. Morgan, 79 Mo. 47. The liability of an alleged principal must rest on a previous authorization, or subsequent ratification of the act or some act of estoppel. This proposition is so well settled in this State that only a few authorities are cited. Hoppe v. Saylor, 53 Mo. App. 4; Alexander v. Rollins, 14 Mo. App. 109; Alexander v. Rollins, 84 Mo. 657. (3) The Statute of Limitations bars an action on a verbal contract after five years. R. S. 1899, sec. 4273; Thompson v. School District, 71 Mo. 495. The mortgage debt alleged to have been assumed by defendant matured and was due November 6, 1896, and the statute started to run from that date and was barred when this suit was filed, March 26, 1904—nearly eight years. Fontaine v. Lumber Co., 109 Mo. 560; Ham v. Hill, 29 Mo. 275; Rowsey v. Lynch, 61 Mo. 560; Bank v. Leyser, 116 Mo. 75.

*Cole, Burnett & Moore* for respondent.

(1) When a contract of sale of real estate is fully executed, as it was when Grigsby conveyed to defendant A. C. Poole, in August, 1896, then the agreement of A. C. Poole to pay an existing debt against the land, the school fund mortgage in this instance, in payment of the purchase money, is not an agreement to pay the debt of another. It is a part of the original undertaking and constitutes a part or all of the consideration of the original purchase price. And when A. C. Poole assumed

Van Meter v. Poole.

payment of the mortgage debt as part of the purchase price, she became the principal debtor. (2) E. B. Poole acted as the agent of and for A. C. Poole in purchasing the real estate from Grigsby. The entire testimony shows that. Dry Goods Co. v. Bank, 81 Mo. App. 46; Johnson v. Railway, 116 N. C. 21, S. E. 28; Crosno v. Milling Co., 106 Mo. App. 236; Alexander v. Wade, 106 Mo. App. 141, 151; Haskett v. Van Frank, 105 Mo. App. 384; State ex rel. v. Harrington, 100 Mo. 170. (3) This action is not barred by the Statute of Limitations. Laumeier v. Hallock, 103 Mo. App. 116; Regan v. Williams, 88 Mo. App. 577; Nelson v. Brown, 140 Mo. 590; Hearne v. Keith, 63 Mo. 89; Wood on Limitations and Actions, sec. 145, p. 320; Bushong v. Taylor, 82 Mo. 660; Huse v. Ames, 104 Mo. 91; Burton v. Rutherford, 49 Mo. 255; Building & Loan Association v. Newman (Tex. Civ. App.), 25 S. W. 461; Tender v. Haseltine, 106 Mo. App. 28. (4) The period of limitation of an action, whether against the principal or cosecurity begins to run from the day of the surety's payment, for on that day the cause of action accrues to him. Singleton v. Townsend, 45 Mo. 379; Burton v. Rutherford, 49 Mo. 255; Bushong v. Taylor, 82 Mo. 671; Amonett v. Montague, 75 Mo. 43; Hearne v. Keath, 63 Mo. 84; Morrison v. Insurance Co., 18 Mo. 262; Burris v. Cook, 117 Mo. App. 385, 399.

JOHNSON, J.—In 1895, G. W. Grigsby borrowed $625 of school money belonging to Barton county, executed a bond therefor due in one year, and secured the payment of the bond by a mortgage on his residence property in Lamar. Plaintiff signed the bond as surety. In 1902, the county obtained a judgment foreclosing the mortgage lien, caused the property to be sold thereunder and plaintiff became the purchaser under a bid of $500. The proceeds of the sale were insufficient to discharge in full the amount of the principal

and accrued interest and plaintiff, as surety, was compelled to pay the difference, together with the costs of the foreclosure suit. In 1896, and before the bond matured, Grigsby sold the property to defendant for $140 and, so he says, the oral agreement of defendant to assume the payment of the school fund bond. He executed and delivered to defendant a warranty deed which expressed a consideration of $1,500, and which contained the recital: "This deed is made subject to trust deed of $625." In the present action, plaintiff, relying on the oral agreement between Grigsby and defendant by which the latter undertook to pay the mortgage bond, seeks to recover at law from defendant the amount of the liability he incurred and discharged as surety on that bond. Defendant, a married woman, denies she made such agreement and asserts she paid $140 for Grigsby's equity in the land with the distinct understanding that she would not assume the payment of the school fund debt, but would take the title to the property subject thereto. The issue of fact thus raised was resolved by the court sitting as a trier of fact in favor of the contention of plaintiff and, as this conclusion is supported by substantial evidence, we have no occasion to interfere but must accept as established the fact that defendant, at the time she purchased the property and received the deed, orally agreed to assume the payment of the mortgage debt. The judgment was for plaintiff and defendant appealed.

Plaintiff, by paying the debt of his principal, became subrogated to the rights of the latter acquired by virtue of that agreement and is entitled to the enforcement of such rights. He is not estopped by the recitals of the deed from showing the real nature of the consideration paid or to be paid by defendant; the oral agreement does not fall within the Statute of Frauds; is not to be considered as an agreement to answer for the debt of another; nor is it at variance with the re-

cital in the deed that the conveyance was merely subject to the mortgage lien. That recital of itself imposed no obligation on the grantee to assume the debt but, being consistent with the existence of a cotemporaneous agreement of that nature, cannot serve to devitalize such agreement. In 1 Jones on Mortgages (6 Ed.), section 750, it is said: "The contract of assumption is independent of the deed. The verbal agreement is additional thereto and in no respect contradictory if the conveyance was in terms subject to the mortgage. It does not vary the terms of the contract and is not merged therein."

That the promise of the vendee of land to pay off an incumbrance to be valid needs not be incorporated in the deed of conveyance nor evidenced by a written instrument, but may be orally made, was conclusively decided by the Supreme Court in Nelson v. Brown, 140 Mo. 1. c. 588: "The execution of the deed from Brown was sufficient to take the contract out of the statute of frauds. Where the contract of sale of real estate is fully executed by the vendor by executing and delivering a deed therefor, an agreement to pay an existing debt against the land, in part or full payment of the purchase money for the land, is not within the statute of frauds and is not required to be in writing, nor is it an agreement to pay the debt of another and therefore void if resting in parol, but is an original undertaking, and constitutes a part or all of the purchase money as the case may be."

Defendant interposes the Statute of Limitations as a bar to the action, contending that "the mortgage debt alleged to have been assumed by defendant matured and was due November 6, 1896, and the statute started to run from that date and was barred when this suit was filed, March 26, 1904—nearly eight years." An important and permanent effect of the agreement of defendant to assume the mortgage burden was to establish the

relation between her and her grantor Grigsby of principal obligor and surety with defendant in the former role.  In Nelson v. Brown, supra, it was held: "When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for the payment of the debt, but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect, by the operation of equitable principles, upon the relations subsisting between the mortgagor, the grantee, and the mortgagee.  As between the mortgagor and the grantee, the grantee becomes the principal debtor primarily liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship.  As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety in all of his subsequent dealings with them. Payment, therefore, by a grantee who has assumed the entire mortgage debt completely extinguishes the mortgage; he cannot be subrogated to the rights of the mortgagee, and keep the mortgage alive for any purpose. While the mortgagee may release the mortgagor without discharging the grantee, his release of the grantee, or his valid extension of the time of payment to the grantee, without the mortgagor's consent, would operate to discharge the mortgagor.  In short, the doctrines concerning suretyship must control the dealings between these three parties."  To the same effect is the decision of the St. Louis Court of Appeals in Laumeier v. Hallock, 103 Mo. App. 116.

The application of these rules to the facts of the present case requires us to hold that, with the status of principal obligor and surety once established be-

tween Grigsby and defendant Poole, that status necessarily continued during the life of the mortgage bond. Had Grigsby himself paid the amount of the deficiency remaining after the application of the proceeds of the sale, he could have compelled defendant to reimburse him on the ground that he had paid the debt as defendant's surety, and the statute of limitations would not have begun to run against his action until, in response to his obligation as surety, he had actually paid the debt. As plaintiff, by discharging the bond became subrogated to the rights of Grigsby, it follows that limitations did not begin to run against his action until he paid the debt. This was in 1902, and as suit was brought in 1904, the action was not barred.

Point is made that plaintiff failed to show by evidence that defendant's husband who conducted the transaction with Grigsby was the authorized agent of defendant, but we find the evidence abundantly sustains the finding of the learned trial judge that such agency existed.

The judgment is affirmed. All concur.